UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHULIE JONES,

    Petitioner,                                    Case no. 08-cv-13286

v.                                           HONORABLE STEPHEN J. MURPHY, III

LLOYD RAPELJE,

    Respondent,
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Pro se petitioner Shulie Jones is confined at the Alger Maximum Correctional Facility in Alger, Michigan. He asks the Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Jones challenges his conviction of two counts of carjacking, Mich. Comp. Laws § 750.529a, two counts of armed robbery, Mich. Comp. Laws § 750.529; and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the reasons stated below, the Court denies the petition.[1]

**FACTUAL BACKGROUND**

Jones was convicted of the above offenses following a jury trial in the Wayne County

---

[1] Jones originally filed a habeas petition on July 30, 2008 that raised five separate claims of ineffective assistance of counsel. The Court dismissed the petition without prejudice because the petition contained an unexhausted claim. Docket no. 17; *see Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)) (a federal court cannot adjudicate habeas petitions containing unexhausted claims). The Court prospectively tolled the statute of limitations during the time Jones returned to state court to exhaust one of his claims. Jones subsequently filed a motion to lift the stay (the Court never stayed the petition) and asked the Court to accept the proposed amended petition he filed with the motion. The amended petition removed the unexhausted claim. The Court granted the motion on October 8, 2009, accepted the petition, and ordered Respondent to file a supplemental answer addressing the merits of Jones's claims.

Circuit Court.

At trial, Tenisha Whitford testified that she was sitting in the passenger's seat of Yvette Polk's car, when Polk went into a Chinese Restaurant. Whitford was approached by a man whom she could not see well. When Whitford tried to get out of the car, a second man, whom she identified as Jones, was present at her door and told Whitford not to get out of the car. Jones, armed with a gun, later ordered Whitford to exit the car and leave behind her belongings, which included a cell phone, a purse, identification, and a jacket. Whitford immediately identified Jones in a police lineup, and she positively identified him at trial as her assailant, testifying that she was "hundred percent sure" of her identification. Trial Tr. vol. II, 65-75; 147-48.[2]

Yvette Polk testified at trial that she was approached by a man armed with a gun. She did not get a good look at the man who approached Whitford on the passenger side of the car. Polk's automobile and her purse were stolen by the man that approached her. *Id.* at 88, 95-96.

Jones was arrested several days later in the area where the robbery and the carjacking occurred. At the time of his arrest, Jones told police that his name was Christopher Lee Jones. He was in possession of Whitford's state identification card, as well as a gun which Whitford positively identified as the weapon that was used by her assailant during the robbery. *Id.* at 74-75, 99-104.

Outside the presence of the jury, defense counsel made the following request:

---

[2] The trial took place over three days, July 25-27, 2005. Trial transcripts for two of the days were docketed incorrectly. The transcripts of the proceedings on July 25, 2005 (vol. I) were docketed under the transcripts for July *27*, 2005. *See* docket no. 13-6. The transcripts of the proceedings on July 27, 2005 (vol. II) were docketed under the transcripts for July 27, *2007*. *See* docket no. 13-9. Citations in this opinion are to the transcript volumes themselves.

2

> Your Honor, it may become necessary in this case for my client to take the stand and testify. He has a prior conviction of an unlawful driving away of an automobile which, of course, would go to impeachment by a prior conviction. I am asking the Court to not allow the prosecution to bring that matter out. So my client can take the stand and can testify as to what happened the night of the alleged carjacking. There is an allegation that my client made a statement, which my client denied all along. Yesterday I was given a copy of a signed statement which I never seen before. I need to have my client take the stand to explain the statement that the prosecution, what I expect they will produce. The copy that I received in my discovery were all blank as far as signature line were concerned. I wasn't aware that these forms were signed until yesterday. Now that a copy's in the file that was signed by my client, supposedly that was in red ink, which indicates that he was involved, he was at the location, and he gives an explanation as to why he had some identification. Therefore I ask the Court to -- I'm asking the Court for an instruction to not have the prosecution bring up my client's past record.

*Id.* at 90-91.

The trial court denied counsel's request. *Id.* at 93.

Sergeant Julius Moses testified that Jones made a statement after he was arrested. Sergeant Moses transcribed his questions and Jones's answers verbatim. Sergeant Moses acknowledged that the copies of the statement and the Constitutional Rights Notification Certificate Form provided to defense counsel in discovery did not appear to be signed or initialed. Although Moses insisted that Jones had initialed the written statement and Form, he admitted on cross-examination that one could not see the signature or initials on the copies earlier provided to counsel because the documents were signed in red ink, which apparently did not copy well on the police department's copier. *Id.* at 122-138. Sergeant Moses testified that he did not record Jones's statement by audio or videotape, nor were there any other persons present to witness the statement. *Id.* at 136-37, 139. Copies of the documents bearing Jones's initials and signature were admitted into evidence. *Id.* at 140.

Sergeant Moses testified that Jones told him that Jones was walking in the area

3

where the carjacking and robbery took place and saw James Bussel and a lady standing by the restaurant. Bussel told Jones to get into Polk's car along with him. Jones told Sergeant Moses that he got into the car and the two men drove off. Jones told Moses that he later realized the car was stolen. Bussel told Jones that he'd give him "something out of the deal" if he would ride with him. At some point, Jones asked to be let out of the car and was dropped off at his brother's house. Jones admitted being in possession of a "black tore up raggedy bb gun" at the time of his arrest, which he indicated he got from his cousin. *Id.* at 141-42.

Jones presented an alibi defense through his own testimony and that of several witnesses. Jones also testified that he did not have a BB gun or other weapon in his possession at the time of arrest, nor did he give the police a false name. He testified that he never met with Sergeant Moses. He denied making a statement to Moses, claimed that he was never read his constitutional rights, and indicated that he had not seen the police department's Constitutional Rights Notification Certificate Form until the trial. Jones denied initialing and signing the document. *Id.* at 158; Trial Tr. vol. III, 6-15, 29-32.

In closing arguments, defense counsel argued that Jones had never been interviewed by Sergeant Moses. Defense counsel noted that the Constitutional Rights Notification Certificate Form Jones had purportedly signed showed no signatures or initials. Defense counsel further observed that Jones's statement had not been recorded, nor had any other persons witnessed Jones giving the statement. Defense counsel also emphasized that although Sergeant Moses claimed that his copy of the Form contained Jones's signature, none of the other copies of the Form contained a signature. Counsel emphasized that no attempts were made to verify that the signature on Sergeant Moses's copy of the Form was Jones's signature. Trial Tr. vol. III, 56, 58-59, 62.

4

Jones was convicted of the above offenses. He was sentenced to twelve to twenty five years in prison on the armed robbery and carjacking convictions and a consecutive two year prison sentence on the felony-firearm convictions.

The Michigan Court of Appeals affirmed the conviction, but remanded for resentencing after finding that the trial court sentenced him to a minimum sentence that exceeded the correct sentencing guidelines range of 81 to 135 months for the armed robbery and carjacking offenses, and that counsel had been ineffective for incorrectly informing that trial court that the sentencing guidelines range was 81 to 202 months. *People v. Jones*, No. 264888, 2007 WL 548022 (Mich. Ct. App. Feb. 22, 2007). The Michigan Supreme Court denied leave to appeal. *People v. Jones*, 479 Mich. 864 (2007). Jones was resentenced on June 29, 2007 to nine to twenty years in prison on the armed robbery and carjacking convictions.

Petitioner now seeks a writ of habeas corpus on the following ground:

> Trial counsel's many errors constituted ineffective assistance of counsel under the Sixth Amendment and requires a new trial where the errors were so substantial that they could have changed the outcome of the trial or in the alternative, re-sentencing.

Amended Petition, at 4.

## STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## DISCUSSION

Jones claims he was deprived of the effective assistance of counsel during his trial and at his initial sentencing. The Court addresses the conviction and sentencing phases separately.

To establish a violation of the right to effective assistance of counsel, a habeas petitioner must satisfy two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate that counsel's

performance was deficient, a habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A. <u>Conviction Phase Claims</u>

With respect to the conviction phase, Jones argues that counsel was ineffective for failing to investigate the circumstances surrounding the statement he (allegedly[3]) gave to Sergeant Moses, for failing to object to the prosecutor's delayed disclosure of his signed statement and Constitutional Rights Notification Certificate Form, and for failing to request a *Walker* hearing[4] prior to trial in order to challenge the admissibility of his alleged statement.

> The Michigan Court of Appeals rejected these claims, stating the following:
>
> Defendant has failed to establish either that counsel's performance fell below an objective standard of reasonableness or that the allegedly deficient performance prejudiced the defense. Defendant has made no showing that, had a *Walker* hearing been held, his written confession would have been suppressed. Indeed, counsel presented all of the relevant facts concerning the confession to the trial court, and yet the court determined that relief was not warranted. Although defendant argues that counsel failed to investigate the circumstances surrounding the confession and failed to object to the delayed production of the signed confession, the record establishes otherwise. Counsel consistently argued that defendant had not signed the statement or the constitutional rights form, and counsel requested that defendant's prior conviction be suppressed as a remedy for the delay in production of the legibly signed statement. In his closing argument, counsel emphasized that the copies of the interrogation records that were provided to both the defense and the prosecution before trial did not contain signatures or initials, and that defendant testified he was never interviewed by Sergeant Moses.
>
> Defendant has failed to establish that he was prejudiced in any way by

---

[3] Jones uses the adverb "allegedly" in his petition.

[4] *People v. Walker (On Rehearing)*, 374 Mich. 331 (1965).

7

counsel's failure to seek suppression of the statement on the ground that it was untimely produced or by his failure to request a continuance to adequately prepare for this "new" evidence. Counsel had been provided a copy of defendant's statement in advance of trial. Although the copy did not reveal defendant's initials or signature, counsel had a full day to prepare after receiving the legibly signed documents, and there has been no showing that counsel should have, or could have, employed any different strategy in demonstrating that the statement was not made. Furthermore, contrary to defendant's contention that counsel failed to present evidence that the signatures and initials on the interrogation documents were not defendant's, counsel did present such evidence: defendant's testimony that the signatures were not his. Moreover, defendant did not simply testify he did not sign or initial the written statement; rather, he testified he never even spoke with Officer Moses and did not make any statement at any time. Under these circumstances, whether the documents contained initials or signatures is simply irrelevant. Defendant has not demonstrated either that suppression of the legibly signed statement was warranted or that he would have in any way benefited [sic] from an adjournment. Trial counsel is not ineffective for failing to make a futile motion or argument.

Finally, even had the interrogation documents been suppressed, there has been no showing that there is a reasonable probability that the outcome of trial would have been different. Evidence was presented that, at the time of his arrest, defendant was in possession of the victim's state identification card and the gun used in the carjacking. The victim immediately identified defendant in a police lineup, and she positively identified him at trial as her assailant. Although defendant claimed he never spoke with Moses and never gave a statement to the police, the statement presented at trial contained numerous details about defendant's personal life, which presumably could only have been supplied by defendant. In sum, defendant cannot establish that, absent his statement, the jury would not have found him guilty of the charged offenses.

*Jones*, 2007 WL 548022, * 2 (citation omitted).

Jones's claim that defense counsel was ineffective for failing to investigate the circumstances surrounding the taking of his statement by Sergeant Moses lacks merit. Defense counsel was given one day before trial a copy of the interrogation documents, which purportedly contained Jones's initials and signature. During the cross-examination of Sergeant Moses and in closing arguments, defense counsel brought up the fact that the copies of the interrogation records provided to both the defense and the prosecution before

trial did not contain Jones's signatures or initials. Counsel brought out the fact that Jones's statement had not been audio or videotaped, nor were there any persons who could corroborate that Jones had made the statement to Sergeant Moses. Counsel emphasized that no attempts were made to verify that the signature and initials on Sergeant Moses's copy of the interrogation documents were those of Jones. Counsel also called Jones to testify that the signature and initials on the documents were not his. Jones does not indicate in his petition what additional information should have been elicited by defense counsel through any pretrial investigation. A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner make no showing of what evidence counsel should have pursued and how such evidence would have been material to the defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997)). Accordingly, Jones cannot prevail on his claim that trial counsel unreasonably failed to adequately investigate the circumstances surrounding his statement.

Jones next contends that counsel was ineffective for failing to object to the belated disclosure of interrogation documents containing legible signatures and initials.[5] Under Michigan law, to determine the appropriate remedy for a discovery violation in a criminal case, "the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v. Banks*, 249 Mich. App. 247, 252 (2002). A complaining party must also show that the discovery violation caused him actual prejudice. *See People v. Davie (After Remand)*, 225 Mich. App. 592, 598 (1997). The "exclusion of otherwise admissible evidence is an

---

[5]Jones has never made an independent prosecutorial misconduct claim.

extremely severe sanction that should be limited to egregious cases." *People v. Taylor*, 159 Mich. App. 468, 487 (1987). Moreover, "[a] remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case." *Id.*

In light of this framework in Michigan for suppressing evidence as a penalty for discovery violations, Jones has failed to show that his signed statement would have been suppressed had counsel objected to the prosecution's late disclosure. First, it appears that Sergeant Moses's failure to produce the original copy of the interrogation documents was not malicious, as he believed that the photocopies provided counsel contained a readable signature and initials. Because it appears that the failure to produce the original copy of the documents was inadvertent, Jones would not be entitled to exclusion of the statement on this basis. Moreover, Jones is unable to show that he was prejudiced by the belated disclosure of the original copy of his interrogation documents, because counsel was able to effectively cross-examine Sergeant Moses about the circumstances surrounding the taking of the statement and was able to point out that Sergeant Moses never obtained a verification that the signature on the documents belonged to Jones. Because this does not appear to have been a material violation of a discovery order, Jones is unable to show that this statement would have been suppressed had counsel objected. Counsel does not act unreasonably by failing to raise a meritless motion.

Jones next contends that counsel was ineffective for failing to move for a *Walker* hearing in order to suppress his statement. In *People v. Walker*, the Michigan Supreme Court held that it is reversible error to submit to the jury the question of whether a defendant's confession was given voluntarily. 374 Mich. at 338. Jones has failed to show that his statement would have been suppressed had counsel requested a *Walker* hearing.

10

Jones has never alleged that he was coerced or intimidated into making a statement to the police. Instead, Jones has consistently maintained, at trial, on direct appeal, and in his current habeas petition, that he never spoke to Sergeant Moses or made any statement to him. Under Michigan law, a criminal defendant is entitled to a *Walker* hearing to prevent prejudice that may occur if a defendant has made inculpatory statements that are legally inadmissible due to the coercive circumstances surrounding the statements. *People v. Spivey*, 109 Mich. App. 36, 37 (1981). A trial court does not have to grant a *Walker* hearing "where a defendant contests the fact of a statement rather than its voluntariness." *People v. Weatherspoon*, 171 Mich. App. 549, 554 (1988); *see also People v. Washington,* 4 Mich. App. 453, 455 (1966) (the question of the voluntariness of defendant's statement could not be reviewed by Michigan Court of Appeals so long as the defendant persisted in his denial that the statement was made). In cases where a criminal defendant denies making a statement to the police, the question whether defendant made the statements is correctly left to the jury to decide. *Weatherspoon,* 171 Mich. App. at 555. In light of the fact that there was no legal basis for excluding Jones's statement, counsel was not ineffective for failing to move for a *Walker* hearing. *See, e.g.*, *Brown v. McKee*, 231 Fed. Appx. 469, 475 (6th Cir. 2007) (citing *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999) (counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance).

Finally, with respect to all of Jones's claims of ineffective assistance of counsel relating to the conviction phase, given the weight of the evidence of guilt in this case, Jones is unable to establish prejudice from any of counsel's alleged deficiencies. Specifically, he cannot show the outcome would have been any different had counsel investigated the circumstances surrounding his post-arrest statements, sought to suppress the statements, or requested a *Walker* hearing. Ms. Whitford immediately identified Jones in a police lineup

and positively identified him at trial as her assailant.  At the time his arrest, Jones was in possession of Whitford's state identification card and the gun that Whitford identified as the one used by Jones in the carjacking and armed robbery.  Finally, Jones told the police at the time of his arrest that his name was Christopher Lee Jones.  In Michigan, evidence that a defendant gave a false name to the police at the time of his arrest may be admitted to show a consciousness of guilt.  *People v. Cutchall*, 200 Mich. App. 396, 399-401 (1993), *overruled on other grounds People v. Edgett*, 220 Mich. App. 686, 691-94 (1996).  In light of the evidence in this case beyond Jones's post-arrest statement, counsel's failure to seek the suppression of this statement or to otherwise attack it did not prejudice the defense.  Thus, Jones cannot establish ineffective assistance of counsel.

Because Jackson has failed to establish that his defense counsel was ineffective, he cannot show that the Michigan Court of Appeals' decision was unreasonable under § 2254(d).  *See Guilmette v. Howes*, --- F.3d ----; 2010 WL 4117281, at *10 (6th Cir. Oct. 21, 2010) (en banc) (Boggs, J., concurring in part and dissenting in part) ("Guilmette, therefore, cannot satisfy the *Strickland* standard; *a fortiori*, the state trial court's decision on post-conviction review that counsel was not ineffective was not unreasonable." (citing (*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)).

B.  Sentencing Phase Claim

Jones next claims that counsel was ineffective for incorrectly informing the trial court that his sentencing guidelines range was 81-202 months, which, after the prosecutor failed to lodge an objection to this range, lead the court to impose a twelve year minimum on the carjacking and armed robbery counts.

On direct appeal, the Michigan Court of Appeals agreed with Jones that the correct sentencing guidelines range for these offenses was 81-135 months, and that counsel had

12

erroneously informed the trial court that the sentencing guidelines range was higher. The Michigan Court of Appeals remanded the matter to the trial court for resentencing. *Jones*, 2007 WL 548022, at *3. Jones was resentenced to nine to twenty years in prison on the armed robbery and carjacking offenses, a sentence within the correct sentencing guidelines range of 81-135 months.[6] In light of the fact that the Michigan Court of Appeals ordered that Jones be resentenced within the corrected sentencing guidelines range, and the fact that Jones has been resentenced accordingly, this claim of ineffective assistance of counsel, predicated on his sentencing guidelines claim, and is now moot. *See James v. Singletary*, 995 F.2d 187, 188 (11th Cir. 1993) (state court's resentencing rendered moot petitioner's habeas claim that sentencing was unconstitutional); *Kokowicz v. Lafler*, No. 2:06-CV-10702; 2007 WL 1098529, *5 (E.D. Mich. Apr. 12, 2007) (finding petitioner's sentencing claim on habeas review was rendered moot by the Michigan Court of Appeals' decision to remand for resentencing).

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a district court's denial of his habeas petition, the district court must determine if petitioner is entitled to a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The

---

[6] Under Michigan law, it is only the minimum sentence that must presumptively be within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255 n.7 (2003) (citing Mich. Comp. Laws § 769.34(2)). The maximum sentence is either set by statute or fall within the judge's discretion.

13

"substantial showing" threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003).

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Jones has not made a substantial showing of the denial of a constitutional right with respect to his claim. *See* 28 U.S.C. § 2253(c)(2). More specifically, the Court finds that reasonable jurists could not debate the Court's rulings on Jones's claims. The Court therefore declines to issue a certificate of appealability.

## CONCLUSION AND ORDER

**WHEREFORE**, it is hereby **ORDERED** that the amended petition for a writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**SO ORDERED.**

    s/Stephen J. Murphy, III
    Stephen J. Murphy, III
    United States District Judge

Dated: October 28, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 28, 2010, by electronic and/or ordinary mail.

                                         s/Alissa Greer
                                         Case Manager